[Civ. No. 21218.   Second Dist., Div. Three.   Feb. 2, 1956.]

MICHAEL DE YOUNG, Respondent, v. FRANK HAYWOOD et al., Appellants.

Parker, Stanbury, Reese & McGee for Appellants.

Crawford & Baker for Respondent.

SHINN, P. J.—Plaintiff De Young instituted this action against Frank Haywood, Thomas L. Dooley, Wm. J. Cain and Barbara K. Lehmann, who before the trial had become the wife of Mr. Cain, for damages resulting from a collision between plaintiff's Chevrolet passenger car and Haywood's Mercury sedan driven by Dooley, who was Haywood's agent, operating the car in the course of his employment. The verdict and judgment were in favor of plaintiff against Haywood and Dooley but in favor of Wm. J. Cain and Barbara K. Cain. Haywood and Dooley appeal.

The collision occurred north of Santa Barbara on a three-lane highway which at that point extended in an easterly and westerly direction. Plaintiff was driving westerly in the northerly lane which we will refer to as lane No. 3. Mr. Cain was driving eastward in an International truck loaded with hay; Mrs. Cain was following him in a pickup truck carrying several bales of hay; she had two children with her; she was in the right-hand lane which we will call lane No. 1. Dooley testified that as he approached the pickup from behind he was traveling 30 or 35 miles per hour, crossed into lane No. 2, speeded up to 40 or 45 miles per hour in order to pass the pickup but that the pickup started to move into the second lane; he was about 50 feet behind it at that time; he began "banging" on his horn; he continued to blow the horn but the truck remained half in lane No. 1 and half in lane No. 2; he thought the driver would hear him and move

back into lane No. 1. He endeavored to pass the pickup, put on his brakes, but could not come to a stop. He testified "so I think I sideswiped the pickup and that threw me out of control." He could not say what part of his car came into contact with the pickup. He got about halfway past the pickup which was going at a speed of about 35 miles. He was knocked crosswise, part of his car being in the center lane and part in the third. He did not think there was room enough to pass the pickup and that is why he endeavored to stop. He did not see the Chevrolet until a few moments before the collision. In his deposition he said he saw the Chevrolet coming but thought he could pass the pickup in the center lane; he went into the second lane to pass the truck when he was about 100 feet from it; he kept "banging on the horn"; the pickup moved over a little bit; he saw no cars for a quarter of a mile ahead of him so he kept going straight ahead and the pickup then "eased"over onto him, enough to make him lose control of the car; when he hit the brakes he skidded sideways. Mrs. Cain testified she was driving in lane No. 1 and did not leave it. There was another car about 40 feet ahead of her. Mr. Cain's truck was also ahead of her and was traveling in the center lane just before the accident occurred. There was also a station wagon in lane No. 1 ahead of the car immediately ahead of her. Dooley drove the Mercury past her truck at a very great speed; she was going 35 or 40 miles an hour and she estimated the speed of the Mercury at 70 to 80 miles. The International truck was then in the middle lane about 100 feet ahead of her and 100 feet ahead of the Mercury. The Mercury swerved around the International and hit the Chevrolet head-on in lane No. 3. At this time the International was passing the station wagon. The collision turned the Mercury around until it was facing south. It was thrown across the road toward her; there was contact between the Mercury and the pickup. She put on her brakes but the Mercury hit the front left fender of her car; the parking lights were smashed in and the hub cap came off; this collision occurred in lane No. 1; the Mercury bounced back; the International was a little bit beyond the point of impact. Mr. Cain testified that he was driving the International; just before the accident he was in the center lane in the act of passing a station wagon which was in lane No. 1; he had just passed the point of the accident when the Mercury and the Chevrolet came together. The front fender of the pickup was damaged. Plaintiff testified the Mercury was

close behind the International. It appeared that the driver of the Mercury put his brakes on hard—"the rear end was sliding back and forth like a dog's tail." The Mercury was in the center lane when he first saw it. It came into lane No. 3, swung back over and out of sight; he (plaintiff) was about 400 feet distant; he applied his brakes until the Mercury went back into the center lane and then released his brakes and swung over to the right as far as he could; there was a guard rail along his right beyond which was a ravine. When he (plaintiff) was 50 or 60 feet from Mr. Cain's truck, the Mercury suddenly came over at a right angle; the left front fender of the Chevrolet and the right front fender of the Mercury came together; the Mercury spun around and landed headed southwest; the International had moved over into lane No. 1. He testified the hay truck had just passed him; he did not see the pickup until after the accident but when he first saw the International and the Mercury, the International was in the center lane. There was no evidence of marks on either the pickup or the Mercury indicating that they had sideswiped.

The court gave instructions in the language of sections 526, 528, 531 and 544 of the Vehicle Code. As applied to the evidence and considering the essence of these rules, it was the duty of Mrs. Cain to drive as nearly as practicable within lane No. 1 and not to move into lane No. 2 until she had ascertained that she could do so in safety; before turning into lane No. 2 it was her duty to give a hand signal during the last 50 feet of travel in lane No. 1. Dooley had a right to drive in the center lane in overtaking and passing the pickup if the roadway ahead was clearly visible and the center lane was clear of traffic for a safe distance; otherwise he should not have turned into the center lane. The court did not instruct that violation of any of these requirements of the code would give rise to a presumption of negligence. Nevertheless these rules of the road are merely descriptive of practices that have long been recognized throughout the country and are known to everyone of sufficient judgment and experience to act as a competent juror. We do not doubt that if the jury had found that Mrs. Cain encroached upon lane 2 in the manner described by Dooley she would have been found guilty of negligence. And if it had been found that Dooley voluntarily attempted to pass the pickup when lane 2 was obviously not clear of traffic

for a safe distance he would have been found guilty of negligence. Proper instructions were given with respect to the general rules of negligence. Inasmuch as there was no instruction with respect to any presumption of negligence the factual questions were submitted to the jury and were decided in accordance with the requirements of ordinary care.

Plaintiff was an innocent victim and was clearly entitled to recover his damages from Dooley and Haywood or from all four defendants. Dooley endeavored to place the blame upon Mrs. Cain by claiming that she came part way into the center lane in front of him and left him insufficient room to pass in that lane; that in attempting to pass her he sideswiped the truck; that at 45 miles per hour he could not stop behind her. He and Haywood were entitled to instructions upon this theory of the accident. ■ The doctrine of sudden and unexpected peril was applicable to Dooley's account of the accident and the court gave such an instruction. Under that doctrine Dooley, if free from negligence when he found himself in a position of danger, was not required to use the good judgment that would have been required of him in calmer and more deliberate moments; if his efforts to avoid an accident were such as would have been exerted by a person of ordinary prudence, he would be held guiltless. In applying the rule answers must be found for two questions, namely, did the person in question get himself into the dangerous position without negligence on his part, and did he thereafter use ordinary care to extricate himself from the danger.

■ Appellants requested an instruction to the general effect that Dooley's being in lane No. 3 was not negligence as a matter of law.[1] The instruction was refused and the ruling

---

[1] "'You are instructed that the mere fact, standing alone, that the impact between the De Young car and the Dooley car occurred in the most northerly lane of traffic, or the left lane for Mr. Dooley, does not necessarily require you to find that Mr. Dooley was guilty of negligence. You must take into consideration all of the surrounding circumstances, as shown by the evidence, concerning why the Dooley car was in that lane of traffic at the time of the accident and unless you are convinced, by all of the evidence, that his presence there was due to negligence on his part, then there would be no basis for liability against Mr. Dooley regardless of the fact that the impact occurred in the left-hand lane for him. In other words, it is not only the right of an automobile driver, but it is his duty to do whatever is reasonably necessary under the circumstances to avoid an accident, and if he in the exercise of ordinary care swerves to the left-hand side of the road to avoid an accident he is not liable for damages so long as his actions were within the range of what might be expected of an ordinary prudent driver in his position.'"

is assigned as error. There was no error. The essence of the instruction is that if Dooley swerved into lane No. 3 in order to avoid an accident he should be held free from negligence if that was the prudent thing to do under the circumstances. Thus the instruction ignores Dooley's conduct in getting into a position of danger and confines the inquiry as to negligence to his efforts to get out of it. Indirectly the instruction assumes that Dooley was not traveling at an excessive speed, and yet was unable to slow down behind the pickup. It improperly centers attention upon his conduct after he found himself in that situation. There was a sharp conflict in the evidence as to his speed. Mrs. Cain estimated it at 70 or 80 miles per hour. Dooley estimated the speed of the pickup at 35 miles and his own speed at 45 miles per hour. He testified he was 50 feet behind the pickup when he realized his danger and "banged" on his horn to warn the driver. Assuming his estimates of speed and distance to be correct he would have had to travel about 225 feet before overtaking the pickup if he made no attempt to slow down. If, short of that distance, he had slowed down to 35 miles per hour he would have avoided the pickup. His testimony that he could not slow down enough to avoid a collision indicated that his speed was largely in excess of 45 miles per hour. The claim of Dooley and Haywood that Dooley was forced out of the middle lane by the pickup was submitted to the jury under appropriate and sufficient instructions. It would have been error to give the instruction that was refused. There is no need to mention other features of the instruction which are criticized by plaintiff.

During the arguments plaintiff's attorney stated that he had seen one of appellants' attorneys contend that a proper method of reaching a verdict is to multiply the special damages by three; also that none of the jurors would be willing to go through such an accident for $9,000. These statements were objected to and are assigned as misconduct. The first statement was improper. An attorney should realize the unfairness of attributing to his adversary statements or admissions off the record that would call for a denial or explanation by the latter, also foreign to the record. Counsel for plaintiff in their brief very properly do not attempt to justify the criticized statements; they contend that they were not made with any improper motive and were not prejudicial.

Certainly there was no such misconduct as would warrant a reversal of the judgment. Mr. and Mrs. Cain were exonerated from blame. Plaintiff has not appealed from the judgment in their favor. The prospect that upon a retrial Dooley and Haywood also would be exonerated, leaving the innocent plaintiff without redress, is indeed remote.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.