[Civ. No. 20233. First Dist., Div. Three. Aug. 31, 1962.]

D. K. BERRYMAN, Plaintiff and Appellant, v. BAYSHORE
CONSTRUCTION COMPANY et al., Defendants and
Respondents.

332

Engelberg & Engelberg and Nathan Engelberg for Plaintiff and Appellant.

W. W. Kitchel, D. W. Brobst, D. Ralph Cesari and Andre V. Tolpegin for Defendants and Respondents.

SALSMAN, J.—The plaintiff appeals from a judgment of nonsuit in favor of defendant Bigge Drayage Company, and from a judgment on a verdict in favor of defendant Bayshore Construction Co.

Plaintiff's suit was one for damages for personal injuries arising out of these facts: Bayshore Construction Co. was general contractor in the construction of the Social Security Building in Oakland; the Fitzmaurice Cement Company was engaged as a subcontractor to pour the cement floors; plaintiff was a member of a four-man crew engaged in putting the wet cement in place on the day of the accident; the defendant Bigge Drayage Company, at the request of the general contractor, was hired to provide a crane and an operator to deliver the wet cement from the street to the Fitzmaurice Cement crew working on the second floor. The wet cement was first poured into a large bucket at street level; the Bigge crane operator would then raise the bucket vertically to the roof of the building, some four stories in height. When the bucket had attained sufficient height to clear the roof, the operator would swing the boom and bucket out over the building in order to lower it to the cement crew working below. After the bucket had passed over the height of the roof it was lost to the sight of the crane operator, and from that point on the operator worked "blind," except for the aid of a signalman provided by the general contractor, Bayshore. The signalman stood at the third-floor level and was able to see the crane operator, the bucket, and the cement crew, and by means of hand signals could direct the crane operator in lowering and raising the bucket. It was necessary to lower the bucket through a breezeway to the second floor. The cement crew, acting as a team, would guide the bucket into position by signals transmitted to Bayshore's signalman, who

in turn would signal the crane operator. When in position, the bucket would be dumped by a member of the cement crew. The dumping process consisted of a member of the cement crew pulling a handle attached to the bucket. It was known by plaintiff that if the bucket was emptied of its contents suddenly and all at once, it would rise, or "jump" or, as one witness said, it would go "wild." The bucket itself was of considerable weight and was approximately 5 feet in height.

When the accident which caused injury to plaintiff happened, the bucket had been lowered through the breezeway and down to the second floor; the cement crew pushed it under some overhead beams, and plaintiff yelled "dump it"; the contents of the bucket spilled out rapidly and the bucket "jumped." When the bucket jumped it struck the overhead beams which, in turn, were knocked out of place and fell down on plaintiff, causing serious injuries.

Two questions are presented by plaintiff's appeal: First, plaintiff contends that his instructions on the doctrine of res ipsa loquitur should have been given to the jury, and second, plaintiff complains of prejudicial error in comment on the subject of insurance by counsel for defendants.

 The instructions offered by plaintiff on the subject of res ipsa loquitur are those found in BAJI 206, 206-B and 206-C. On the state of the evidence before it, and the record before us, the trial court was correct in refusing the res ipsa instructions because the facts do not justify the application of the doctrine.

 As explained in *Ybarra* v. *Spangard,* 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258], the doctrine of res ipsa loquitur has three conditions: " '(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.' (Prosser, Torts, p. 295.)''

 The doctrine does not apply where the evidence does not disclose a balance of probability in favor of negligence upon the part of the defendant. "The applicability of the doctrine of res ipsa loquitur depends on whether it can be said, in the light of common experience, that the accident was more likely than not the result of defendant's negligence. 'Where no such balance of probabilities in favor of negligence can be found, res ipsa loquitur does not apply.' '' (*Tucker* v. *Lombardo,* 47 Cal.2d 457 [303 P.2d 1041] at p. 465.)

In determining whether or not the doctrine is applicable to a given set of facts our Supreme Court has established certain guide lines helpful to the trial judge who must decide the question in the first instance. "In determining whether such probabilities exist with regard to a particular occurrence, the courts have relied both upon common knowledge and the testimony of expert witnesses, and they have considered the circumstances relating to the accident in each particular case, such as the extent of control exercised by the defendant, the plaintiff's own conduct, the likelihood of negligence by some third person, and, in some situations, evidence that the defendant is better able than the plaintiff to explain what happened. All of these matters have been treated as aids to help the courts in determining whether the accident was of such a nature that the injury was more probably than not the result of the defendant's negligence." (*Zentz* v. *Coca Cola Bottling Co.,* 39 Cal.2d 436, 446-447 [247 P.2d 344].)

When the facts of this case are tested by the principles set out in *Ybarra* v. *Spangard, supra,* 25 Cal.2d 486, and the instructive language of *Zentz* v. *Coca Cola Bottling Co., supra,* 39 Cal.2d 436, it is apparent that the doctrine does not apply. From the evidence before the trial court it seems clear that there was no balance in favor of the defendants' negligence as a probable cause of the accident. On the contrary, there was direct evidence that the immediate cause of plaintiff's misfortune was the act of the cement crew in pushing the bucket under the overhead beams, and plaintiff's own cry of "dump it," followed immediately by the rapid release of the heavy load of wet cement by plaintiff's coworkers. It is true that a plaintiff may properly rely upon res ipsa loquitur even though he has participated in the events leading to the accident if the evidence excludes his conduct as the responsible cause. (See *Zentz* v. *Coca Cola Bottling Co., supra,* 39 Cal.2d 436; *Gow* v. *Multnomah Hotel,* 191 Ore. 45 [224 P.2d 552, 228 P.2d 791]; *Guerrero* v. *Westgate Lumber Co.,* 164 Cal.App.2d 612 at 615-616 [331 P.2d 107].) Here, however, appellant's evidence does not exclude his own conduct as a responsible cause of the accident and his injuries. The release device on the cement bucket was controlled at the bucket itself, and the cement was released by plaintiff's cement crew and not by either of the defendants. Thus it appears that the foundation for invoking the rule of res ipsa is not established by the evidence and the trial court correctly refused the offered instructions. (See *Meyers* v.

*G. W. Thomas Drayage etc. Co.,* 108 Cal.App.2d 529 [239 P.2d 118].)

 Plaintiff also complains of the reference by defense counsel to the subject of insurance in the *voir dire* examination of the jurors. Several references were in fact made to the subject of workmen's compensation insurance, of which the following is typical: (Mr. Kitchel, counsel for defendant Bayshore Construction Co.) "Now, Mr. Berryman was working at the time this accident happened. Do you understand the difference between what they call an industrial accident, where there are matters that are presented before an Industrial Accident Commission, and this kind of a case?" (Mr. Engelberg) "Well, that is not relevant, Your Honor." (The Court) "I think it has some relevance. She may answer the question." (Mr. Kitchel) "Whereas, in an industrial accident, where someone is hurt on the job, as against their own employer, where they don't have to prove right or wrong, they just have to prove they were hurt—you understand that?"

The only objection made by plaintiff's counsel was that noted above. In final argument to the jury, defense counsel again returned to the subject of insurance when he said: "I think this is an industrial accident, and that's where it should remain, because I don't think the evidence shows any negligence that caused this except the negligence of Mr. Berryman and his crew around this cement bucket." There was no further objection to these comments; there was no motion made for a mistrial, and no motion for a new trial was ever made by plaintiff.

We find no substance whatever in this assignment of error. We note in the transcript that plaintiff himself injected the subject of workmen's compensation into the record. Plaintiff was asked by his counsel: "Q. Where were you examined, now? A. State Comp.—— Q. Just tell us what doctors you saw."

Of even greater significance was plaintiff's introduction into evidence of a large group of medical and hospital bills, referring to and showing payment by the State Compensation Insurance Fund. Moreover, plaintiff produced a witness who was identified before the jury as a permanent disability rater for the Industrial Accident Commission, who stated that his job was to "determine and establish permanent disability resulting from an industrial injury." Further testimony of this witness was successfully objected to by defendants, but

from what the jury heard of the witness and from an examination of the plaintiff's medical and hospital bills, as well as plaintiff's own testimony, the question of workmen's compensation insurance was undoubtedly in the air. Finally, the court properly instructed the jury in the language of BAJI 157, by which the jurors were told that plaintiff had received certain sums from workmen's compensation insurance; that the insurance carrier would have a first lien on any award given to plaintiff, and that if the jury found for plaintiff, it should neither add to nor deduct from the award any amount because of workmen's compensation insurance.

As the court said in *Sherillo* v. *Stone & Webster Eng. Corp.*, 110 Cal.App.2d 785 [244 P.2d 70] at p. 789: "The average reasonably well-informed person who may be called to serve upon a jury knows that a workman injured in his employment receives compensation. It is a delusion to think that this aspect of the case can be kept from the minds of the jurors simply by not alluding to it in the course of the trial." (See also *Adams* v. *Southern Pac. Co.*, 82 Cal.App.2d 560 [186 P.2d 729].)

Judgments affirmed.

Draper, P. J., and Devine, J., concurred.