[Civ. No. 8207. Fourth Dist., Div. Two. Aug. 29, 1967.]

BENNETT MARCUS, Plaintiff and Appellant, v. PALM HARBOR HOSPITAL, INC., Defendant and Respondent.

Edward L. Lascher for Plaintiff and Appellant.

Kirtland & Packard, Robert C. Packard and Dickran Tevrizian, Jr., for Defendant and Respondent.

KERRIGAN, J.—The plaintiff is a medical doctor specializing in obstetrics and gynecology. The actual defendant herein is Grove View Corporation, which operates a medical facility in the County of Orange known as the Palm Harbor Hospital. At the time of the fall here involved, plaintiff was a consultant on the staff of Palm Harbor Hospital.

During the evening of November 9, 1961, plaintiff attended a movie and returned home around 10 p.m. After retiring for approximately an hour, he was contacted by a Doctor Howard at Palm Harbor Hospital, who requested that the plaintiff come to the hospital and assist him in connection with a Caesarian operation to be performed on a Mrs. Hamp. Plaintiff immediately departed for the hospital, met the patient, checked her medical history, and concurred in the surgery, which he and Dr. Howard commenced at approximately 12:30 a.m. on November 21, 1961. Mrs. Hamp's child died during surgery.

At the conclusion of the operation the plaintiff conferred briefly with Dr. Howard and then proceeded to the doctors' lounge, where he changed from his surgical gown to street clothes, groomed himself, and made one or two phone calls. He then left the lounge and went down a corridor which intersected with the principal corridor in which the fall subsequently occurred. He checked a particular area where pathology reports were customarily maintained and then crossed the main corridor diagonally and stopped at the bulletin board for the purpose of reading some postings.

In the interim, Dr. Howard visited the lobby to talk with Boyd Hamp, husband of the patient upon whom the Caesarian had been performed. The young son of the patient, Richard, was asleep on a couch when Dr. Howard came to the lobby and informed Mr. Hamp of the unfortunate surgical result.

The boy suddenly awoke and vomited on the couch where he was resting. Nurse Davis went to the boy's assistance and said she would handle him, whereupon the father resumed his conversation with Dr. Howard. As Nurse Davis took Richard from the lobby into the main corridor on the way to the emergency room, the boy vomited again immediately outside of the lobby door, and subsequently repeated the vomiting episode as they progressed down the main corridor.

A clerk in the hospital's employ was at the reception switchboard in the lobby when the youngster vomited on the couch, and observed the nurse assist the boy from the lobby. The clerk heard the boy vomit again near the lobby door. She immediately summoned a maintenance man, informed him of the vomiting incidents, advised that there was cleaning up for him to do, and then resumed her customary duties. The maintenance man immediately began his work in the lobby area.

In the meantime, within a matter of seconds after Nurse Davis departed from the lobby with the boy en route to the emergency room, the plaintiff started down the main corridor and slipped and fell in the vomitus in the vicinity of the emergency room. According to the plaintiff's own testimony, while he was at the bulletin board a nurse called to him from the adjacent emergency room and asked the plaintiff to come to the emergency room and look at a sick boy. When the plaintiff had taken a few steps, the nurse purportedly called out, "Doctor, watch out," and as the doctor looked up at her, he slipped and fell in the vomitus.

The maintenance man testified as to the manner in which he cleaned up the vomitus on the floor at the drinking fountain near the lobby door, and related how he made several trips to clean up the vomitus on the sofa in the lobby, which procedures consumed some 15-30 minutes. However, the maintenance man was not aware of the existence of vomitus further down the corridor near the emergency room where plaintiff sustained the fall. It was agreed during trial that plaintiff slipped and fell in a pool of vomitus and incurred a severe fracture of the leg as a result thereof. It was also stipulated that the vomitus created a hazardous condition and that plaintiff had the legal status of a business invitee at the time of the fall. The crucial factual issue on the issue of liability related to the time factor involving notice of the hazardous condition. Quite obviously, the jury resolved this issue in favor of the defendant-hospital as indicated by its

verdict for the defense. Plaintiff candidly and forthrightly admits that there was sufficient evidence to prove that a time period of less than 10 minutes transpired between the vomiting episodes and plaintiff's fall. Plaintiff does not make any contention on appeal that the evidence was insufficient to sustain the verdict for the defendant, and admits that there was sufficient evidence to sustain such verdict if the conduct of the trial had been otherwise free from error.

Plaintiff urges the following grounds in seeking a reversal: (1) misconduct of defense counsel; (2) error in the instruction concerning impeachment by evidence of "bad character"; (3) error in the instructions on the issue of contributory negligence because there was a lack of substantial evidence to support the instruction, and further because the doctrine of "rescue" was applicable to ameliorate the effect of plaintiff's contributory negligence; and (4) the trial court erred in rendering an instruction on the issue of agency and in permitting defense counsel to argue on the issue of agency.

Plaintiff asserts that defense counsel was guilty of misconduct in the following respects: (1) In engaging in unjustifiable attacks on plaintiff's attorney during interrogation of witnesses and during argument; (2) by using the technique on cross-examination of prefacing multiple questions with the phrase, "Isn't it a fact that . . ."; (3) in referring to matters in argument which were not in evidence or excluded from evidence; and (4) by offering himself as a witness, in urging his own credibility, and by injecting his personal beliefs into the trial of the cause.

During defense counsel's cross-examination of the plaintiff and witnesses called in his behalf, defense counsel repeatedly inquired as to the amount of time plaintiff's counsel expended in conferring with the plaintiff and the witnesses in preparation for trial. This cross-examination reflected that plaintiff's attorney had conferred with Boyd Hamp and his son for some 11 hours, and 4 hours with another witness. During argument defense counsel urged that plaintiff's witnesses had been "brainwashed." Plaintiff contends that during argument defense counsel implied that coercion had been practiced on the Hamps by plaintiff's counsel to induce them to co-operate because of their involvement in the accident to the extent that the boy's nausea had precipitated the fall. Plaintiff further urges that defense counsel suggested that plaintiff's attorney had taken state-

ments from the boy, Richard Hamp, which he was unwilling to produce at trial.

An attorney may be guilty of misconduct in denouncing opposing counsel. (*Peacock* v. *Levy*, 114 Cal.App. 246, 253 [299 P. 790].) Derogation of the opposing party and the impugning of his motives may be of such a serious nature as to constitute misconduct requiring a reversal. (*Garden Grove School Dist.* v. *Hendler*, 63 Cal.2d 141, 143-144 [45 Cal.Rptr. 313, 403 P.2d 721].) Where there is no evidence indicating that the defendants suppressed or destroyed evidence, and plaintiff's counsel intimates in his argument to the jury that evidence was suppressed, and the trial court fails to admonish the jury as requested by the defendants after plaintiff's attorney's remarks have been assigned as misconduct, the judgment in favor of the plaintiff should be reversed. (*Weaver* v. *Shell Co.*, 13 Cal.App.2d 643, 650 [57 P.2d 571].) The deliberate accusation by an attorney of imposition upon a witness by opposing counsel may warrant a reversal where such misconduct is deliberate, intentional, and unsupported by the evidence. (*Deibler* v. *Wright*, 119 Cal.App. 277, 282-283 [6 P.2d 344].) Argument to the effect that opposing counsel was attempting to compel or suppress facts has been held improper. (See *Missouri-K.-T. R.R. Co. of Texas* v. *Ridgway*, 191 F.2d 363, 369-370 [29 A.L.R.2d 984]; *Gist* v. *French*, 136 Cal.App.2d 247, 263-264 [288 P.2d 1003].) Plaintiff's counsel's vilification of opposing counsel is reprehensible where, among other things, he refers to defense counsel as "an idiot," a "smart guy," and "a laughing hyena," where he characterizes defense objections as "asinine," and "hogwash," where he accuses defense counsel of suborning perjury and frequently tells opposing counsel to "shut up." (*Love* v. *Wolf*, 226 Cal.App.2d 378, 391 [38 Cal.Rptr. 183].)

While the foregoing authorities establish that an abusive and reprehensible personal attack on opposing counsel may well constitute misconduct justifying reversal of a judgment, a review of the record herein does not disclose such misconduct on the part of defense counsel, nor does it reflect that the latter accused plaintiff's attorney of suppressing evidence or coercing witnesses. In fact, plaintiff's counsel concedes that there was no direct scurrilous attack by defense counsel such as typified the *Love* case. In *Love* v. *Wolf, supra*, 226 Cal. App.2d 378, the trial judge completely abrogated his responsibility to control the trial and maintain decorum; plaintiff's

attorney made derogatory and buffoonish remarks concerning defense counsel; he further endeavored to bring before the jury matters not in evidence; and his actions during the trial, from beginning to end, were characterized by the making of inflammatory statements designed to arouse the passion of the jury.

However, in the case under review, the young boy, Richard, admitted under cross-examination that he had been interrogated by plaintiff's counsel for a period of 11 hours; he further testified that he had given statements regarding the fall to investigators; he indicated that most of the facts contained in his extrajudicial statement represented what other people had told him; he confirmed that his memory had been refreshed by his father and plaintiff's counsel. Another witness, Joe Stapish, recounted that statements purportedly made by him to plaintiff's counsel were not, in fact, made by him. An objective analysis of defense counsel's actions would indicate that he was an aggressive advocate but was not guilty of any deliberate and intentional misconduct. "Aggressive advocacy is not only proper but desirable. Our jurisprudence is built on a firm belief in the adversary system." (*Love* v. *Wolf, supra,* 226 Cal.App.2d 378, 393.)

 Furthermore, the record does not indicate that plaintiff's trial counsel herein cited defense counsel for misconduct or otherwise objected to the latter's tactics. Misconduct of an attorney is not a ground for reversal where the other party, even though objecting to the remarks, fails to request that the jury be charged to disregard them; the effect of misconduct can ordinarily be removed by an instruction to the jury to disregard it; it is therefore generally essential, in order that such act be reviewed on appeal, that it shall first be called to the attention of the trial court at the time it occurs. (*Risley* v. *Lenwell,* 129 Cal.App.2d 608, 658-659 [277 P.2d 897].) Generally, a claim of misconduct is entitled to no consideration on appeal unless the record shows a timely and proper objection together with a request that the jury be admonished. (*Horn* v. *Atchison, T. & S.F. Ry. Co.,* 61 Cal.2d 602, 610 [39 Cal.Rptr. 721, 394 P.2d 561].) The reviewing court will not consider alleged misconduct of counsel if an admonition to the jury, if asked for and given, would have removed the adverse effect. (*Mohn* v. *Tingley,* 191 Cal. 470. 490 [217 P. 733]; *Merralls* v. *Southern Pac. Co.,* 182 Cal. 19, 25 [186 P. 778]; *Scott* v. *Times-Mirror Co.,* 181 Cal. 345, 368 [184 P. 672, 12 A.L.R. 1007]; *Grossetti* v. *Sweasey,* 176 Cal. 793, 800 [169 P. 687].)

If an attorney fails to object to prejudicial remarks, questions, or conduct of opposing counsel, his failure constitutes a waiver. (*Kershaw* v. *Tilbury*, 214 Cal. 679, 690 [8 P.2d 109]; *Gibbons* v. *Los Angeles Biltmore Hotel*, 217 Cal.App.2d 782, 790 [31 Cal.Rptr. 826]; *Paul* v. *Key System*, 80 Cal.App.2d 21, 26-27 [180 P.2d 940].) It is only in extreme cases that the court, when acting promptly and speaking clearly and directly on the subject, cannot, by instructing the jury to disregard such matters, correct the impropriety of the act of counsel and remove any effect his conduct or remarks would otherwise have. (*Tingley* v. *Times-Mirror Co.*, 151 Cal. 1, 23 [89 P. 1097]; *People* ex rel. *Dept. of Public Works* v. *Auburn Ski Club*, 241 Cal.App.2d 781, 792 [50 Cal.Rptr. 859]; *Hansen* v. *Warco Steel Co.*, 237 Cal.App.2d 870, 878 [47 Cal.Rptr. 428, 48 Cal.Rptr. 164].)

The next assignment of misconduct concerns defense counsel's employment of the "Isn't it a fact" technique in propounding questions on cross-examination. Plaintiff cites *Dastagir* v. *Dastagir*, 109 Cal.App.2d 809 [241 P.2d 656], and *Love* v. *Wolf, supra*, 226 Cal.App.2d 378, for the proposition that the use of this type of questioning is improper. But neither of the cited cases stands for such a principle. In *Dastagir* the court found that defense counsel asked plaintiff questions on cross-examination about matters not in evidence. In the *Love* case, the reviewing court found that the method of plaintiff's counsel in propounding "Did you know that . . ." type of question was improper and constituted misconduct for the reason that the questions so prefaced assumed facts not in evidence, and was employed for the purpose of bringing to the jury's attention matters which were not then in evidence and which were never introduced in evidence. The interrogation by defense counsel herein alluded to facts which were in evidence.

In his next claim of misconduct, plaintiff urges that defense counsel argued matters which were not in evidence, notwithstanding plaintiff's unsuccessful objection thereto. The argument concerned a particular statement made by the witness Boyd Hamp, and in overruling the objection, the court admonished the jury that it was to be guided solely by its own recollection of the evidence. The second contention with respect to this type of argument related to defense counsel's comment concerning tape recordings purportedly made by plaintiff's investigator, accompanied by the suggestion that the tapes might have been edited. While the court

overruled this objection, there was absolutely no evidence to sustain this argument. Misconduct of defense counsel in arguing facts to the jury that are not justified by the record is improper. (See *Malkasian* v. *Irwin,* 61 Cal.2d 738, 747 [40 Cal.Rptr. 78, 294 P.2d 822].) However, the error was minor in nature and was not prejudicial. Plaintiff concedes that he is unable to show that a different result would have been reached in the absence of misconduct. It would not be reasonable to conclude that a different verdict might have been reached but for such harmless error. (See *Garden Grove School Dist.* v. *Hendler, supra,* 63 Cal.2d 141, 144.)

██ The final citation of misconduct urged by plaintiff is to the effect that the defense attorney offered himself as a witness, made reference to his own credibility, and injected his own personal beliefs into the trial of the cause. Defense counsel argued that his contact with witnesses had been brief and perfunctory as contrasted with the protracted interviews with witnesses engaged in by plaintiff's counsel. Defense counsel also indicated that he felt very strongly about the case and seriously urged the justice of his client's cause. In a civil case, a party may be denied a fair trial where the opposing counsel is guilty of misconduct in alluding to facts not in evidence, in promising to connect up evidence which he neglects to do, in arguing matters relating to his personal knowledge in his summation to the jury, and in resorting to insulting and derogatory characterizations of the opposing party. (*Garden Grove School Dist.* v. *Hendler, supra,* 63 Cal.2d 141, 143.) However, in the case under review, defense counsel did not allude to facts not in evidence, did not insult or deride opposing counsel or his client, but acted in the role of a strong advocate.

In reviewing the charge of misconduct, the record reflects that the trial judge controlled the trial proceedings and did not permit either counsel any unfair advantage. In *Love* v. *Wolf, supra,* 226 Cal.App.2d 378, the trial judge completely abdicated his judicial responsibility, and the actions of plaintiff's counsel therein reduced the proceedings to a farce. In the case under review, the trial was extended in point of time, and the record reveals that a proper decorum was maintained by the trial judge at all stages of the proceedings so as to assure a fair trial. (See *People* ex rel. *Dept. of Public Works* v. *Auburn Ski Club, supra,* 241 Cal.App.2d 781, 791.)

██ The trial court instructed the jury in terms of BAJI

26 (Rev.) relating to the subject of the credibility of witnesses, and the manner in which a witness may be impeached.[1] Reference to impeachment by proof of a prior felony conviction was deleted in the form instruction. However, the trial court did instruct that impeachment could be established "by evidence adversely affecting the character of the witness for truth, honesty or integrity." There was no "bad character" evidence introduced by either party, and hence the latter portion of the instruction should not have been given. (*Clark* v. *Bradley*, 106 Cal.App.2d 537, 543 [235 P.2d 439].) While it is true that the instruction should have omitted the words relating to "evidence adversely affecting the character of the witness for truth, honesty or integrity," an instruction relating to the credibility of witnesses which is erroneous because of a lack of testimony warranting the instruction is not deemed to be prejudicial. (*People* v. *Knight*, 63 Cal.App. 63, 66-67 [218 P. 79].)

 It is next maintained that the court erred in instructing the jury on the doctrine of contributory negligence inasmuch as the evidence was insufficient to justify application of the rule, and the instructions defining the doctrine incorrectly stated the law as applicable to the facts of this case. It is prejudicial error to instruct on contributory negligence where there is no substantial evidence to support the defense. (*Burke* v. *Blackman*, 52 Cal.2d 715, 719 [344 P.2d 301]; *Sweeney* v. *Pozarelli*, 228 Cal.App.2d 585, 593 [39 Cal.Rptr. 601].) However, there was substantial evidence in this case to justify the instruction pertaining to the doctrine which may be summarized in the following manner: Plaintiff did not look down the hallway or corridor prior to the accident; it was uncertain as to whether plaintiff was wearing glasses at the time of the fall, even though he had eye trouble; the plaintiff still suffered the physical effects of an earlier fall and was himself under a doctor's care; and the plaintiff failed to see the vomitus. The trial court was justified in determining that there was substantial evidence to support the defense. (See 2 Witkin, Cal. Procedure, Trial (1954) § 52, p. 1780; *Greeneich* v. *Southern Pac. Co.*, 189 Cal.App.2d 100, 119 [11 Cal.Rptr. 235].)

At the moment he fell, the plaintiff was responding to the

---

[1]BAJI 26 (Rev.) was formerly based on Code of Civil Procedure section 1847, which section was repealed by Statutes 1965, chapter 299, page 1360, section 44, effective Jan. 1, 1967; superseded by Evidence Code, sections 351, 780, 785.

nurse's call for assistance to aid a sick child. Plaintiff therefore urges that the doctrine of "rescue" is applicable. In the event plaintiff is engaged in an effort to rescue or protect the life of those whose lives are imperiled as a result of defendant's negligence and sustains injury in the course of that effort, he is not barred from recovery by conduct which constitutes ordinary contributory negligence, and his cause may be defeated only by conduct which reaches the level of rashness and recklessness. (*Bilyeu* v. *Standard Freight Lines,* 182 Cal.App.2d 536, 545-546 [6 Cal.Rptr. 65].) The plaintiff also urges that the rescue exception to the contributory negligence rule operates not only against the defendant whose negligence created the original peril which plaintiff as a rescuer was attempting to surmount, but applies as well to all defendants negligently involved in an accident, regardless of the source and creation of the original peril. (See *Scott* v. *Texaco, Inc.,* 239 Cal.App.2d 431, 436 [48 Cal.Rptr. 785]; 1 Rest. of Torts, § 472; 2 Witkin, Summary of Cal. Law (1960) p. 1528.)

However, plaintiff concedes that he did not request a special instruction on the subject of the rescue doctrine, and we have concluded that there was sufficient evidence to instruct on the general doctrine of contributory negligence.

In the event that plaintiff maintained that the "rescue" exception applied, then it was incumbent upon him to submit a proposed instruction defining the doctrine. Generally, in a civil suit, a party desiring specific instructions on any particular matter or subject must request such an instruction or he cannot complain of the court's failure to give the instruction. (*Townsend* v. *Butterfield,* 168 Cal. 564, 569 [143 P. 760]; *Hyde* v. *Avalon Air Transport, Inc.,* 243 Cal.App.2d 88, 93 [52 Cal.Rptr. 309]; *Sarafini* v. *City & County of San Francisco,* 143 Cal.App.2d 570, 576 [300 P.2d 44].) An appellant who asserts the trial court erred in failing to give an instruction must show in the record that such instruction was requested. (*Douglass* v. *Webb,* 209 Cal.App.2d 290, 303 [26 Cal.Rptr. 60].) Inasmuch as the issue was not raised in the trial court, it is not entitled to consideration on appeal. (*Algeri* v. *Tonini,* 159 Cal.App.2d 828, 832 [324 P.2d 724]; 3 Witkin, Cal. Procedure (1954), § 94, p. 2261.)

In conclusion plaintiff charges that the court erred in instructing the jury on the law of agency and in permitting defense counsel to argue in terms of agency. However, the evidence discloses that Nurse Davis was off-duty at the time

the accident occurred, but when the young boy became ill, she volunteered to assist the child to the emergency room. Therefore, a reasonable inference to be drawn from such facts was that Nurse Davis, in remaining at the hospital more than two hours after she went off duty for the hospital, became the agent of Dr. Howard and Dr. Marcus. This inference could arise from the fact that Mrs. Hamp was being treated by both Dr. Howard and plaintiff. Whether an agency relation exists is a question of fact. (*Thayer* v. *Pacific Elec. Ry. Co.*, 55 Cal.2d 430, 438 [11 Cal.Rptr. 560, 360 P.2d 56]; *Wolf* v. *Price*, 244 Cal.App.2d 165, 172 [52 Cal.Rptr. 889]; *Brokaw* v. *Black-Foxe Military Institute*, 37 Cal.2d 274, 278 [231 P.2d 816]; *Bergtholdt* v. *Porter Bros. Co.*, 114 Cal. 681, 688 [46 P. 738]; *Farnum* v. *Phoenix Ins. Co.*, 83 Cal. 246, 261 [23 P. 869, 17 Am.St.Rep. 233].) While it is true that the issue of agency should not be submitted to the jury as a question of fact where there is no evidence to justify the rendition of the instruction (*Glanville* v. *Cannick*, 182 Cal.App.2d 514, 516-517 [6 Cal.Rptr. 175]), there was evidence present herein which justified the giving of the instruction.

Judgment affirmed.

McCabe, P. J., and Thompson (Raymond), J. pro tem.,* concurred.

A petition for a rehearing was denied September 22, 1967, and appellant's petition for a hearing by the Supreme Court was denied October 25, 1967.

---

*Assigned by the Chairman of the Judicial Council.