[Civ. No. 24014. First Dist., Div. One. Oct. 1, 1968.]

CLIFFORD ANDERSON, Plaintiff and Appellant, v. WILLIAM L. JONES, a Minor, etc., et al., Defendants and Respondents.

Bostwick & Rowe, Robert Burns Bostwick, Jr., Eric **D.** Carlye and Jerry L. Houser for Plaintiff and Appellant.

Wines, Coffee, Robinson & Nelson, Thomas F. Nelson and Burton K. Wines for Defendants and Respondents.

SIMS, Acting P. J.—Plaintiff, who seeks to recover damages injuries suffered when he was struck by a vehicle operated by defendant,[1] has appealed from a judgment entered on an adverse verdict. He complains that the jury was misdirected in that the court erred in refusing to give his proffered instructions on res ipsa loquitur, and in giving instructions proposed by defendant on contributory negligence and imminent peril. An examination of the instructions in the light of the evidence in the record reveals no prejudicial error in the particulars specified. The judgment must be affirmed.

*Statement of Facts*

The accident occurred on December 14, 1962, about 10:45 p.m., on the median strip of the Bayshore Freeway, approximately six-tenths of a mile north of Marsh Road in Redwood City. The freeway, at that point, consisted of three 12-foot lanes in each direction, a 26-foot median, or divider strip, and 5-foot paved shoulders.

Plaintiff was driving northward toward San Francisco in the lane nearest the median strip when he saw a car stopped in his lane. He pulled into the center lane, passed the car, and then pulled over to his left into the median strip, and parked from four to seven car lengths in front of the position of the apparently disabled car. While just starting to get out of his car he heard the impact of a collision. He grabbed some flares, struck one, and began to hurry back toward the scene. When he was approximately abreast of the first car, there was a second collision involving a third car, and the rear car of the first collision. Plaintiff slowed down for a moment, in order to determine whether the third car might swerve into the median

---

[1]The defendant operator was a minor. His father appeared as his guardian ad litem, and also individually, as the owner of the vehicle. He admitted permissive use by his son. The jury were instructed that if one was liable, both were liable. For convenience, the operator will be referred to as though he were the sole defendant.

strip, and when it did not, he continued forward. While again running southerly on the median strip, plaintiff saw the headlights of approaching automobiles about 500 or 800 feet to the south, and felt they were a sufficient distance away to allow him to place the flares. He continued to run until he saw, about 15 feet away, the headlights of the car which struck him.

Defendant, who was 17 years old at the time of the accident, was driving northward in his parents' station wagon. He and his three passengers had left a high school dance and were en route to a San Francisco restaurant. While driving at approximately 65 miles per hour in the lane nearest the median strip, he saw a red flare about one-quarter mile in front of him and to the right. Plaintiff placed the point of impact at the center of the median strip. Defendant testified that he was travelling at approximately 35 miles per hour at the time of collision. He stated that his car traveled about 20 feet after the impact. The passenger fixed this distance at ''not more than maybe two car lengths, if that''; and the plaintiff testified that the car went forward approximately one car length. Plaintiff drove himself to the hospital after the accident. He sought to recover for whiplash injuries to the cervical spine; bruises to both shoulders and elbows; bruised coccyx; bruises and contusions to the right knee; injury to the right ankle; and a low back injury. His residual complaints related to the difficulty with his low back. The evidence showed that he had been involved in three prior accidents, including one in 1961, in which he suffered injuries to his low back. The greater portion of the trial was involved with the issues of the extent and proximate cause of his injuries, and the effect upon his business and earning power.

*Res Ipsa Loquitur*

Plaintiff requested instructions numbered 206-A and 206 (Revised) as found in BAJI (volume 2 with 1964 Pocket Supplement. Reference is made to *Cordova* v. *Ford* (1966) 246 Cal.App.2d 180, 183, fn. 3 [54 Cal.Rptr. 508], for the text of these instructions). He insists that under the circumstances of this case the trial court should have permitted the jury to determine whether or not the conditions giving rise to the application of the doctrine of res ipsa loquitur existed as a matter of fact. When the evidence will support findings of the existence of each of the conditions giving rise to the inference that a proximate cause of the occurrence was some negligent conduct on the part of the defendant, it is error to refuse

instructions in the form proffered. (*Shahinian* v. *McCormick* (1963) 59 Cal.2d 554, 558-564 [30 Cal.Rptr. 521, 381 P.2d 377]; *Seneris* v. *Haas* (1955) 45 Cal.2d 811, 827 [291 P.2d 915, 53 A.L.R.2d 124]; *Dennis* v. *Carolina Pines Bowling Center* (1967) 248 Cal.App.2d 369, 375 [56 Cal.Rptr. 453]; *Hansen* v. *Matich Corp.* (1965) 234 Cal.App.2d 129, 132-134 [44 Cal.Rptr. 149]; *Exploration Drilling Co.* v. *Heavy Transport, Inc.* (1963) 220 Cal.App.2d 397, 406-408 [33 Cal.Rptr. 747]; *Rasmus* v. *Southern Pac. Co.* (1956) 144 Cal.App.2d 264, 269-271 [301 P.2d 23]; *Baker* v. *B. F. Goodrich Co.* (1953) 115 Cal.App.2d 221, 226-229 and 233 [252 P.2d 24].)

■ "According to the classic statement and as plaintiff's first proposed instruction correctly declares, there are three conditions for the application of the doctrine of res ipsa loquitur: ' "(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." ' (*Ybarra* v. *Spangard* (1944) 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258] quoting from Prosser, Torts, p. 295 [other citations omitted].) ■ Basically the application of the doctrine rests on probabilities and 'res ipsa loquitur applies where the accident is of such a nature that it can be said, *in the light of past experience,* that it *probably* was the result of negligence by someone and that the defendant is *probably* the person who is responsible.' (Italics added.) (*Zentz* v. *Coca Cola Bottling Co.* (1952) 39 Cal.2d 436, 446 [247 P.2d 344] [other citations omitted].)" (*Cordova* v. *Ford, supra,* 246 Cal.App.2d 180, 184.)

■ In *Cordova,* an action involving a collision between two vehicles, this court concluded that qualified instructions on the doctrine of res ipsa loquitur were properly refused because "the second and third conditions for the application of the doctrine . . . were not met . . ." (*Id.* at p. 188.) An examination of the facts in this case leads to a similar conclusion.

In *Cordova* "we [had] no difficulty in concluding that the first condition has been met." We said, "It seems obvious to us that a two-car collision such as the one engaging our attention ordinarily does not occur in the absence of *someone's* negligence and that an inference properly arises that someone has failed to use due care in the operation of the vehicles." (*Id.,* at p. 186.) The facts of the present case suggest that

there may be circumstances attendant to a wreck on a highway when a further accident may occur despite the exercise of what could be considered due care under the circumstances by all who come upon the scene of the original wreck. It is unnecessary to pursue this point, but we did note in *Cordova*, and would reiterate, that the inference of negligence which may arise from a collision cannot of itself always be attributed to one actor or the other. (See Prosser Torts (3d ed. 1964) p. 227.)

 Here, as in *Cordova*, the plaintiff relies upon the fact that defendant was driving the vehicle involved to establish that he had the exclusive control of the agency, or instrumentality, which caused the accident. In *Cordova* we observed: "In the instant case plaintiff distorts the rationale of the doctrine by arguing that defendant was in exclusive control of *his own* vehicle. But there were *two* instrumentalities involved in the accident. Since plaintiff was in exclusive control of *her own* vehicle, the requisite exclusive control in defendant was not established." (246 Cal.App.2d at p. 187. See also 2 Rest.2d, Torts, § 328D, com. g, p. 161.) So here the plaintiff, in running down the median strip, was in exclusive control of the path he chose to follow and free to determine whether there were hazards in pursuing it.

In *Cordova* we recognized, "While a plaintiff may properly rely on the doctrine of res ipsa loquitur even though he was not inactive at the time of the accident and participated in the events leading up to it, before he can do so the evidence must exclude his conduct as the responsible cause. [Citations.]" (*Id.*, at p. 187.) We recited, "Her testimony gives no inkling as to why she did not see what was directly in front of her and why she did nothing to avoid the collision until it was too late." (Pp. 187-188.) We concluded, "Thus plaintiff's own testimony does not exclude her conduct as a responsible cause of the collision." (P. 188. See also 2 Rest. 2d, Torts, § 328D, com. i, p. 163.) So here plaintiff has failed to explain why he did not see the approach of defendant's car.

In *Cordova* we quoted the following with approval, "When a vehicle operated by *A* collides with a vehicle operated by *B*, there are four possibilities. *A* alone was negligent; *B* alone was negligent; both were negligent; or neither. Of these four only the first will result in liability of *A* to *B*. The bare fact of a collision affords no basis on which to conclude that it is

the preponderant probability. The odds are against it. Accordingly, it has been held that the collision is not in itself enough for the application of res ipsa loquitur in favor of one driver against another. The same is true when an automobile strikes a moving pedestrian. It is only where the plaintiff is shown to have been stationary, or his own fault is eliminated by some other specific evidence, that res ipsa loquitur can apply.'' (Prosser, *Res Ipsa Loquitur in California* (1949) 37 Cal. L.Rev. 183, 204-205; see 246 Cal.App.2d at pp. 185-186.) The cases cited by Dean Prosser, with respect to moving pedestrians, support the action of the trial court in this case.

In *Sauer* v. *Eagle Brewing Co.* (1906) 3 Cal.App. 127 [84 P. 425], the plaintiff, a pedestrian, had been struck by a team of horses at an intersection. The case was reversed for failure to properly qualify instructions on last clear chance. In connection with defendant's contention that an instruction offered by it had been improperly modified, the court stated: ''There are cases where the mere fact of the accident raises a presumption that defendant was negligent, as in cases of injuries to passengers on vehicles of common carriers, because of the special care that the common carrier owes to its passengers. This rule is not limited to injuries to passengers, but exists wherever the circumstances imposed upon one party alone the obligation of special care. (Cooley on Torts, 799.) . . . The rule has no application, we think, where, as in this case, both the parties were in the exercise of an equal right and each chargeable with the same degree of care.'' (3 Cal. App. at p. 132. See also *Depons* v. *Ariss* (1920) 182 Cal. 485, 488 [188 P. 797] ; *Zulim* v. *Van Ness* (1934) 3 Cal.App.2d 82, 86 [38 P.2d 820] ; *Ross* v. *San Francisco etc. Railways Co.* (1920) 47 Cal.App. 753, 758-759 [191 P. 703].) The facts in the instant case should be distinguished from the situation where a vehicle strikes a pedestrian standing on the sidewalk (*Linberg* v. *Stanto* (1931) 211 Cal. 771, 774-775 [297 P. 9, 75 A.L.R. 555]), or strikes, from behind, a pedestrian walking along the shoulder off the paved portion of the road. (*Scheuermann* v. *Kuetemeyer* (1921) 186 Cal. 225, 228-229, distinguishing, p. 230 [199 P. 13], *Depons* v. *Ariss, supra*), or strikes in broad daylight a pedestrian crossing the highway (*Orbach* v. *Zern* (1955) 138 Cal.App.2d 178, 181-182 [291 P.2d 120] ). Significantly, in two of the last-mentioned cases it was noted that the inference of defendant's negligence arose from the facts, and that it was not necessary to resort to the principle of res ipsa loquitur. (*Scheuermann* v. *Kuetemeyer, supra,* at p. 228 ; and *Orbach* v. *Zern, supra,* at p. 183.)

Plaintiff contends that his contribution to the accident was eliminated by the circumstances of this case. He claims that as one who was going to rescue others, or at least protect others, from danger, he did everything a reasonable man would have done under the circumstances. He relies upon the doctrine, which has been adverted to in some of the passages referred to above, and which is exposited by Prosser as follows: "Allied to the condition of exclusive control in the defendant is that of absence of any action on the part of the plaintiff contributing to the accident. Its purpose, of course, is to eliminate the possibility that it was the plaintiff who was responsible. . . . But the requirement may easily be misunderstood. The plaintiff is seldom entirely static, and it is not necessary that he be completely inactive, but merely that there be evidence removing the inference of his own responsibility. . . . Even where the plaintiff's own contribution is left in doubt by reason of conflicting evidence, or his shared control of the situation, it is still possible to apply the principle under proper instructions to the jury." (Prosser Torts (3d ed. 1964) § 39, pp. 228-229.) This statement has been approved by the courts of this state, expressly and impliedly. (See *Vistica* v. *Presbyterian Hospital* (1967) 67 Cal.2d 465, 470 [62 Cal.Rptr. 577, 432 P.2d 193]; *Shahinian* v. *McCormick, supra,* 59 Cal.2d 554, 559-561; *Seneris* v. *Haas, supra,* 45 Cal.2d 811, 826; *Zentz* v. *Coca Cola Bottling Co.* (1952) 39 Cal.2d 436, 444-445 [247 P.2d 344]; *Dennis* v. *Carolina Pines Bowling Center, supra,* 248 Cal.App.2d 369, 374-375; *Hansen* v. *Matich Corp., supra,* 234 Cal.App.2d 129, 134; *Baker* v. *B. F. Goodrich Co., supra,* 115 Cal.App.2d 221, 231-232.)

Plaintiff's analysis confuses the determination of acts which contribute to the occurrence, and the issue, if such acts do contribute to the occurrence of whether the actor, if the plaintiff, was contributorily negligent. In the tainted food or drink cases, middlemen may handle a sealed product, and the victim may carry it home. These acts bear upon, but do not contribute to the inference that the producer was negligent in permitting the product to be manufactured for sale and consumption in a contaminated form. It may, however, be contributory negligence to fail to detect an obvious defect. In the broken bottle cases, the handling by the plaintiff may contribute to the occurrence of its breaking, but whether it destroys the possibility of creating the inference will depend on whether the acts of the plaintiff did or did not exceed the type of handling reasonably to be expected.

In *Shahinian, supra,* where a boat collided with a swimmer, it was claimed that the swimmer's action in attempting to dive under the water, apparently to avoid the boat's propeller was a contributing factor which precluded resort to the res ipsa doctrine. The court said, ''In the instant case plaintiff testified that he made the attempted dive because he believed he was in imminent danger of being run down. That this belief was justified was borne out by the ensuing accident. Defendants contend that the attempted dive amounted to contributory negligence. It is clear, however, from the testimony of the Shahinians, that the jury could reasonably have concluded that the dive was not a cause of the accident and was not a negligent act but instead was, like Mrs. Shahinian's scream, a result of defendant wife's inexperience or negligent handling of the boat or both.'' (59 Cal.2d at pp. 560-561.) In *Vistica, supra,* the court in finding that the plaintiff might not have been a contributing actor to the occurrence stressed the fact that the demented, unintentional acts of the actor, against which the defendant should have guarded, could not defeat application of the doctrine. (67 Cal.2d at pp. 469-471.) In this case the acts of plaintiff were not occasioned by any peril to which the defendant had exposed him. His running down the median strip was a volitional act on his part. The question of whether he exercised due care was, as indicated below, properly left to the jury. The resolution of that issue one way or another did not make him more or less an actor whose acts contributed to the collision between himself and the car.

There was no error in refusing the instructions on res ipsa loquitur. (*Cordova* v. *Ford, supra,* 246 Cal.App.2d 180, 188; and see *Pittman* v. *Boiven* (1967) 249 Cal.App.2d 207, 212-213 [57 Cal.Rtpr. 319]; and *Berryman* v. *Bayshore Constr. Co.* (1962) 207 Cal.App.2d 331, 333-335 [24 Cal.Rptr. 380].)

*Contributory Negligence*

The court instructed the jury on contributory negligence in the language of BAJI Instruction No. 103.1 Revised. Plaintiff claims that this was error because he, as a rescuer, was entitled to assume risks and to perform acts which might otherwise be negligent without being so categorized. The question of whether or not the plaintiff exercised due care for his own safety under the circumstances of this case was a question of fact for the jury. (See *Marcus* v. *Palm Harbor Hospital, Inc.* (1967) 253 Cal.App.2d 1008, 1017 [61 Cal.Rptr. 702]; and *Hiner* v. *Hubbard* (1966) 240 Cal.App.2d 63, 68-69 [49 Cal.

Rptr. 157].) The jury was advised, "Negligence is not an absolute term, but a relative one. By this we mean that in deciding whether there was negligence in a given case, the conduct in question must be considered in the light of all the surrounding circumstances as shown by the evidence." (See BAJI Inst. No. 101 (Rev. 2d par.).) It was further instructed, "Inasmuch as the amount of caution used by the ordinarily prudent person varies in direct proportion to the danger known to be involved in his undertaking, it follows that in the exercise of ordinary care, the amount of caution required will vary in accordance with the nature of the act and the surrounding circumstances." (See BAJI Inst. No. 102-A, prior to revision.)

■ If he had requested it, plaintiff was entitled to an instruction on the standard of care required of a rescuer. (See *Scott* v. *Texaco, Inc.* (1966) 239 Cal.App.2d 431, 434-436 [48 Cal.Rptr. 785] ; *Bilyeu* v. *Standard Freight Lines* (1960) 182 Cal.App.2d 536, 545-546 [6 Cal.Rptr. 65] ; and *Petersen* v. *Lang Transp. Co.* (1939) Cal.App.2d 462, 467-468 [90 P.2d 94].) There was no duty on the trial court to give a qualifying instruction on its own motion. The failure of the plaintiff to submit and request such an instruction precludes him from raising the question on appeal. (*Marcus* v. *Palm Harbor Hospital, Inc., supra,* 253 Cal.App.2d 1008, 1018; *Costa* v. *A. S. Upson Co.* (1963) 215 Cal.App.2d 185, 190 [30 Cal.Rptr. 66].)

*Imminent Peril*

■ The defendant requested and the court gave an instruction on imminent peril in the words of BAJI Instruction No. 137. As indicated by the first clause of the instruction, a person who is suddenly and unexpectedly confronted with a peril because of his own negligence cannot seek shelter behind a qualified standard of care. (*Carley* v. *Zeigler* (1958) 156 Cal.App.2d 643, 645-646 [320 P.2d 165] ; *De Young* v. *Haywood* (1956) 139 Cal.App.2d 16 [292 P.2d 917] ; Prosser Torts (3d ed.) § 33, pp. 172-173 ; 2 Rest.2d, Torts, § 296, com. d, p. 65.)

Plaintiff insists that the evidence demonstrates that the defendant was negligent as a matter of law because he failed to de-accelerate and brake more than he did upon becoming aware that something was wrong ahead. Defendant for his part asserts that in view of the fact that the peril appeared to

be over on the right, and the cars ahead did not appear to be stopped, the jury could find that the defendant acted with due care until confronted with the unusual circumstance of the cars stopped in his lane, and acted reasonably in going onto the median strip to make a gradual stop. The evidence warrants leaving the question to the jury to resolve the conflicting inferences. Under these circumstances it was proper to give the instruction. (*Leo* v. *Dunham* (1953) 41 Cal.2d 712, 714-715 [264 P.2d 1]; *Pittman* v. *Boiven, supra,* 249 Cal.App. 2d 207, 216; *Hiner* v. *Hubbard, supra,* 240 Cal.App.2d 63, 69; *Warren* v. *Sullivan* (1961) 188 Cal.App.2d 150, 154 [10 Cal. Rptr. 340]; *Persike* v. *Gray* (1963) 215 Cal.App.2d 816, 822 [30 Cal.Rptr. 603]; *Westcott* v. *Hamilton* (1962) 202 Cal. App.2d 261, 270-271 [20 Cal.Rptr. 677].)

It may be noted that since this instruction was given impersonally it could have been considered by the jury in evaluating the conduct of plaintiff as well as the defendant. It is conceivable that the jury may have found neither party negligent under the particular circumstances with which he was confronted. As stated in *Bramble* v. *McEwan* (1940) 40 Cal.App.2d 400 at page 410 [104 P.2d 1054] : ''Whether or not the negligence of either driver was a proximate cause of the collision and resultant injuries and whether or not the negligence of each concurred with that of the other was a question of fact to be decided by the jury, and where there was evidence to support the determination so made it will not be disturbed on appeal, even though the facts would warrant a different conclusion. [Citations.] ''

The judgment is affirmed.

Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 27, 1968. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.