Filed 12/16/13  Rios v. Grossmont Union High School Dist. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MICHELLE RIOS etc., et al., | D060971 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2008-00093763-CU-PO-EC) |
| GROSSMONT UNION HIGH SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.

Choate Law Firm, Mark C. Choate; Boudreau Williams and Jon R. Williams for Plaintiffs and Appellants.

Stutz Artiano Shinoff & Holtz, Daniel R. Shinoff and Paul V. Carelli IV for Defendant and Respondent.

Michelle Rios, individually and as guardian ad litem of Colter Rios, and Reymond Rios (collectively, the Rioses), appeal the judgment entered against them after a jury found Grossmont Union High School District (the District) was not liable in negligence for personal injuries Colter sustained while playing in a high school football game. The Rioses claim the trial court prejudicially erred by not instructing the jury on the standard of care in accordance with standards promulgated by a national organization that certifies athletic trainers or a state organization that regulates high school athletics. We hold the Rioses did not preserve these claims of error and affirm the judgment.

I.

FACTUAL BACKGROUND

Colter played on Grossmont High School's junior varsity football team during his sophomore year. During the second play of a game that year, Colter felt a "pop" in his right ankle when he was tackled, and felt pain when he tried to stand up. Colter told his coaches he hurt his ankle and needed to have it taped, but the head coach told him he "should have got that done before the game" and sent him back in the game.

Colter returned to the game without having his ankle taped and again felt pain. He told the coaches he could not run toward the sidelines. After Colter failed to score a touchdown on a play on which he normally would have done so, the head coach took Colter out of the game and asked why he was running "half-assed." Colter responded his ankle hurt and he needed to get it taped. The head coach told Colter to do so.

Colter went to the training table to have his right ankle taped, but the athletic trainer, Keoki Kamau, was not there. Instead, Adrian Dunn, a student in a college

2

athletic training program who had been assisting Kamau on a volunteer basis, was there. Colter told Dunn his right ankle was "bugging him." Dunn examined Colter's ankle but did not see any bruising or deformity. He manipulated Colter's ankle, but found no abnormality and heard no complaints of pain from Colter. Dunn then taped Colter's right ankle, and had him jog, zigzag, sprint, and backpedal. Dunn observed nothing abnormal, and Colter did not complain of pain or any other problem. In fact, Colter said he "felt fine" and could return to the game. Dunn told the head coach Colter could continue to play.

After Dunn cleared Colter to return to the game, the coaches asked him to run a screen pass play, and he agreed to do so. Colter caught the pass and was tackled by an opposing player. The tackler knocked Colter to the ground headfirst, fracturing two of his cervical vertebrae and injuring his spinal cord.[1]

_____

[1]     In their opening brief, the Rioses repeatedly assert the tackle made Colter a "tetraplegic." As support that Colter suffered such a devastating injury, however, the Rioses provided no record citations, in violation of established rules regarding factual assertions made in appellate briefs. (See Cal. Rules of Court, rule 8.204(a)(1)(C); *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 (*Duarte*).) Our own review of exhibits admitted at trial revealed that Colter suffered a neurological injury as a result of the tackle but, fortunately, recovered well and was never a tetraplegic. In interrogatory responses, Colter stated, "The partial paralysis of his hands is permanent . . . ." A physician progress note from four months after the tackle states: "[Patient] [c]laims return to pre-accident neurological baseline and subjective recovery of all motor/sensory function. No difficulty with ambulation." Another physician progress note from nine months after the tackle states, "Has made a nice neurological recovery." Nearly two years after the tackle, the physician noted "the patient is doing well from the standpoint of this severe neck injury. He has minimal residual signs of spinal cord injury consisting mainly of hyperreflexia. He has no motor or sensory deficits." At oral argument, the Rioses' counsel conceded that Colter is not a tetraplegic, but stated there is disagreement over the extent to which he suffers residual effects of the neck injury. We

3

II.

PROCEDURAL BACKGROUND

A.    *Pleadings*

The Rioses submitted a claim to the District as required by the Government

Claims Act (Gov. Code, § 910 et seq.), but the District rejected the claim.  They then

filed a civil action against the District.  As pertinent to this appeal, in their complaint the

Rioses alleged the District negligently allowed Colter to continue to play after he injured

his ankle, and, as a result of that negligence, he sustained "permanent and debilitating

injuries," including two fractured cervical vertebrae, partial upper extremity paralysis,

traumatic brain injury, and torn right ankle ligaments.  Colter's parents alleged they

sustained "severe emotional shock to their nervous systems" when, as a result of the

District's negligence, they saw Colter being injured as they watched the football game

from the bleachers.  The Rioses sought general and special damages, as well as other

relief, for the injuries they allegedly sustained as a result of the District's negligence.

B.    *Motions in Limine*

As the case proceeded to jury trial, the issue of the applicable standard of care

arose in connection with several motions in limine.  The Rioses contended standards

promulgated by the National Athletic Trainers' Association (NATA), an organization that

certifies and sets professional standards for athletic trainers, should govern.  The District

---

thus disregard the repeated assertions in the Rioses' briefing that Colter is a tetraplegic
(*Duarte*, at p. 856) and caution their counsel against making such unsupported assertions
(Rules Prof. Conduct, rule 5-200(B) [attorney shall not seek to mislead court by false
statement of fact]).

4

argued NATA standards did not apply; rather, standards promulgated by the California Interscholastic Federation (CIF), a state organization that regulates high school athletics (see Ed. Code, § 33353), should govern. The trial court ordered the parties to brief the standard of care issue and set a separate hearing on the matter.

In its brief, the District argued NATA standards were not binding because California does not regulate athletic trainers and does not require high schools to have a certified athletic trainer on staff. The District also asserted the CIF is the governing body for high school sports in California, and it publishes a Sports Medicine Handbook that is meant to serve as a guideline for school administrators, coaches, sports medicine staff, students and parents to use to protect the health and welfare of students.

The Rioses argued in their brief that NATA standards were "relevant" to the standard of care applicable to Kamau and Dunn because (1) certification of athletic trainers in the United States is done exclusively by NATA; (2) NATA regulates students who wish to become certified athletic trainers; and (3) the District recognized the importance of NATA certification by hiring Kamau, a certified athletic trainer bound by NATA standards. Without citing any specific NATA standards or filing anything published by NATA, the Rioses asserted that under NATA standards, a certified athletic trainer must be present when a student training to become a certified athletic trainer provides anything more than basic first aid, and students in training may not evaluate or treat a sports injury or make a return-to-play decision. The Rioses also argued CIF guidelines do not prescribe the standard of care. In support of this argument, they quoted the following statement from CIF's Sports Medicine Handbook: "These 'guidelines' are

5

not meant to provide a 'standard of care' and are not meant to supersede medical or administrative judgment decisions that must frequently be made on the scene by appropriate individuals."

At the hearing on the standard of care issue, the parties maintained the positions stated in their briefs. The District insisted "the standard of care in California is derived from the CIF," which "is a creature of statute" and "is in charge of all [high school] interscholastic athletic competition in California." The District also reminded the trial court that NATA standards have not been adopted by the California legislature. In opposition to the District's arguments, the Rioses again pointed out the CIF's Sports Medicine Handbook expressly disclaimed any intent to establish a standard of care. The Rioses argued instead that NATA standards prescribed the standard of care for this case because the District had hired an athletic trainer certified by NATA (Kamau) and assisted by a college student who was training to become a certified athletic trainer (Dunn). Again, however, the Rioses did not direct the court to any specific NATA standards or offer as evidence any publication by NATA.

The trial court ruled NATA standards did not establish the applicable standard of care. The court also ruled the Rioses could ask Kamau about his NATA certification, what he was taught NATA standards required, and why the standards were adopted. In that regard, the court had the following exchange with the Rioses' trial counsel:

> "The Court: . . . But I think I am going to give you the right, since [Kamau] was a certified athletic trainer, . . . [to ask him:] 'Isn't this what happens? Would this happen under your being a certified trainer? Would this happen? This happen? Do you have to be there in the presence of?' I am going to let you probably go through all that."

"[Counsel]: But I can ask the questions of, you went through a NATA-approved training program. You did classes. You were certified. . . . You are a member of NATA. And I am going to ask [Dunn:] . . . 'Isn't it true that you were an athletic training student? Isn't it true that when you were at San Diego State University you agreed to follow these things?'"

"The Court: In the court's opinion, all that is fair game. What I don't want to see, and so therefore [the District] is negligent because [it] violated NATA. I am not going to let you go that far."

"[Counsel]: The question I can't ask [is], 'Was this a violation of NATA?'

"The Court: Correct.

"[Counsel]: But I could say, 'What were you taught?'

"The Court: Absolutely.

"[Counsel]: What were those rules? Why are they in place?

"The Court: You are saying you went through this program. Is that the rule? Absolutely. I have no problem with that.

"[Counsel]: Okay. And then it is up to the jury to decide it is an element of the evidence.

"The Court: Was it reasonable or not.

"[Counsel]: Was it reasonable or not.

"The Court: You better believe it."[2]

The court deferred ruling on whether CIF guidelines prescribed the applicable standard of care.

---

[2] At trial, the Rioses counsel asked Kamau how he became a certified athletic trainer, and he testified he obtained a college degree and took a national examination. Counsel did not ask Kamau any questions about his certification by NATA or about what conduct was required or prohibited by any particular NATA standard.

C.    *Expert Testimony*

The issue of whether NATA or CIF standards prescribed the standard of care came up again during the trial, immediately before the Rioses called Jerald Hawkins, a certified athletic trainer and retired director of sports medicine education, to testify as an expert in the field of athletic training. The trial court confirmed its earlier ruling that NATA standards did not establish the standard of care in California and instructed the Rioses' trial counsel not to imply they do. Because Kamau was an athletic trainer certified by NATA, however, the court granted the Rioses "some leeway" and "intend[ed] to allow [Hawkins] to testify somewhat to NATA," including its training and certification process and standards. The Rioses' trial counsel stated that although the "CIF guidelines specifically say they are not to be a standard of care," he was "comfortable" that CIF guidelines "help[ed] establish the standard of care." The court thus ruled that Hawkins could "look to CIF" for the applicable standard of care.

At trial, Hawkins testified that a certified athletic trainer is someone who has obtained a degree from a college or university with an accredited athletic training education program and has passed the certification examination administered by NATA's board of certification. The Rioses' trial counsel did not ask Hawkins any questions about NATA standards, and he did not testify about them. Hawkins did testify about CIF guidelines, however. He stated the CIF is the governing body for high school interscholastic sports in California and had issued a sports medicine bulletin about ankle injuries. Hawkins testified that according to the bulletin, a player who has pain, limps, or has lost some range of motion should not return to play. In Hawkins's opinion, Dunn

8

should not have made the decision to return Colter to play after he hurt his ankle because, under CIF guidelines, that type of decision is a medical decision to be made only by a physician or a certified athletic trainer with appropriate training and experience.

D.    *Jury Instructions*

The parties' counsel also discussed the standard of care issue with the trial court at the conference on jury instructions. The Rioses trial counsel asserted that after the District had notice of Colter's ankle injury, "it's a basic straight negligence standard, and it is up to the jury to decide whether the caretakers, the adults in charge, exercised reasonable care in the circumstances." The parties' counsel then discussed several standard jury instructions with the court.

When the trial court got to CACI No. 401, entitled "Basic Standard of Care,"[3] the Rioses' trial counsel said, "[O]kay, I think that is the standard." The court gave the jury that instruction. The Rioses' trial counsel also approved the instruction that an "adult must anticipate the ordinary behavior of children" and "must be more careful when dealing with children than with other adults," and the court gave that instruction to the jury. (CACI No. 412.) Although the trial court did not discuss CACI No. 413 with counsel during the conference on jury instructions, the court gave that instruction, without objection, and advised the jury that in determining whether the District had met

---

3    The version of CACI No. 401 given to the jury stated:  "Negligence is the failure to use reasonable care to prevent harm to oneself or to others.  [¶]  A person can be negligent by acting or failing to act.  A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation.  [¶]  You must decide how a reasonably careful person would have acted in [the District's] situation."

9

the standard of care, the jury could "consider customs or practices in the community." Such customs and practices, the court further advised the jury, were "only factors for [it] to consider," and did "not necessarily determine what a reasonable person would have done in [the District's] situation." (*Ibid.*)

The District's trial counsel also requested a special instruction, based on *Dailey v. Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747 (*Dailey*), that "[t]he standard of care upon school personnel is that degree of care which a person of ordinary prudence, charged with comparable duties, would exercise under the same circumstances." The Rioses' trial counsel agreed this instruction should be given, and the trial court gave it. The Rioses' trial counsel requested no instructions based on NATA standards or CIF guidelines or any other special instructions.

E.      *Verdict, New Trial Motion, and Judgment*

After receiving the above-mentioned instructions (among others), hearing the parties' closing arguments, and deliberating, the jury returned a special verdict form answering "No" to the question, "Was [the District] negligent?" The Rioses moved for a new trial on the ground the trial court's erroneous rulings regarding the applicable standard of care deprived them of a fair trial. (Code Civ. Proc., § 657.) The court denied the motion and entered judgment in favor of the District and against the Rioses.

III.

DISCUSSION

A.    *The Parties' Contentions*

The Rioses' "contentions in this appeal are all founded on instructional error, specifically, the trial court's multiple and contradictory decisions on the standard of care," which they claim "deprived the jury of any meaningful standard upon which to measure the conduct of Kamau and Dunn."  The Rioses urge "three fundamental grounds for reversal":  (1) "the trial court erred in failing to apply and instruct the jury on national standards of care for [c]ertified [a]thletic [t]rainers (like Kamau) and [a]thletic [t]raining [s]tudents (like Dunn) to measure their conduct"; (2) the trial court "erred in ruling that CIF standards of care as detailed in its *Sports Medicine Handbook* only applied to coaches and could not be used to measure Kamau and Dunn's conduct, because as sports medicine professionals, they had greater education and training than coaches"; and (3) these "errors combined to cause great prejudice," in that "it is reasonably probable that a different outcome would have resulted had the jury been properly instructed on the standards of care applicable to Kamau and Dunn."

The District counters that the judgment should be affirmed.  According to the District, the Rioses forfeited any claim of instructional error because they agreed to the general standard of care instructions that were given and "did not offer the trial court a special jury instruction concerning the standard of care based upon NATA or any other source."  Even if there were no forfeiture, the District contends there was no error because NATA standards do not prescribe the applicable standard of care in California,

11

and the trial court properly permitted the jury to consider CIF guidelines in determining whether the District breached the standard of care. Further, the District argues any instructional error was not prejudicial. Finally, the District asserts the judgment may be affirmed on the alternative ground that the doctrine of primary assumption of the risk bars the Rioses' claims, a contention the trial court rejected when it denied the District's motion for summary judgment.

B.     *Analysis*

As we shall explain, we agree with the District's forfeiture arguments. By agreeing to the general instructions the trial court gave regarding the standard of care and not requesting more specific instructions based on NATA standards or offering any evidence to support the giving of such instructions, the Rioses lost their right to claim on appeal that the court erred by not instructing the jury in accordance with NATA standards. The Rioses also may not complain that the trial court erred by refusing to instruct the jury that CIF guidelines provided the applicable standard of care to be applied to Kamau and Dunn, because the Rioses proposed no such instructions and the court allowed CIF guidelines to be used exactly as the Rioses had urged at trial.

1.     *NATA Standards*

The Rioses primary argument on appeal is that NATA standards "established the relevant standards of care at issue in this case. As such, it was error for the trial court to refuse to instruct the jury about those NATA standards." At some places in their briefing, the Rioses suggest the trial court should have given specific instructions based on NATA standards *instead of* the general instructions the court actually gave. At other places, they

12

suggest the court should have given special NATA-based instructions *in addition to* the general instructions. Either way, the Rioses did not preserve this claim of error.

To the extent the Rioses contend the trial court erred by giving general instructions on the standard of care (e.g., CACI Nos. 401, 412, 413) instead of more specific instructions based on NATA standards, they invited the error and may not challenge it on appeal. "It has been said that the invited error doctrine 'applies "with particular force in the area of jury instructions . . ."' [citation], and numerous cases have held that a party who requests, or acquiesces in, a particular jury instruction cannot appeal the giving of that instruction." (*Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 1000; see also *Mayes v. Bryan* (2006) 139 Cal.App.4th 1075, 1090 ["'It is an elementary principle of appellate law that "[a] party may not complain of the giving of instructions which he has requested."'"].) At the conference on jury instructions, the Rioses' trial counsel stated that this case called for "a basic straight negligence standard, and it is up to the jury to decide whether the caretakers, the adults in charge, exercised reasonable care in the circumstances." Counsel then expressly agreed to pattern instructions that advised the jury it "must decide how a reasonably careful person would have acted in the [District's] situation," and that an adult "must be more careful when dealing with children than with other adults." (CACI Nos. 401, 412.) Thus, having agreed to the pattern

instructions given by the trial court, the Rioses may not now complain that those instructions were too general and should not have been given.[4]

To the extent the Rioses contend the trial court erred by refusing to give specific instructions based on NATA standards in addition to the general instructions the court gave on the standard of care, they forfeited the contention. Generally, each party to a civil case must propose complete instructions in accordance with his theory of the case; if a party does not do so, the court has no duty to instruct on its own motion. (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1067 (*Pool*).) "In order to complain of failure to instruct on a particular issue the aggrieved party must request the specific proper instructions." (*Hyatt v. Sierra Boat Co.* (1978) 79 Cal.App.3d 325, 335 (*Hyatt*).) Thus, when a court gives a legally correct instruction, but a party complains it is too general, lacks clarity, or is incomplete, the party "'"must request [an] additional or qualifying instruction in order to have the error reviewed."'" (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1131, italics omitted (*Metcalf*).) In sum, if the law applicable to the facts of a case is stated correctly in a general charge to the jury, a party may not, in the absence of a request for a more specific instruction, complain that a more specific

---

[4] The District points out that the Rioses did not object to the pattern instructions. That is true but inconsequential. No objection is required to preserve a claim that an instruction was erroneously given because instructions are deemed excepted to. (Code Civ. Proc., § 647; *Lund v. San Joaquin Valley Railroad* (2003) 31 Cal.4th 1, 7; *Ventura v. ABM Industries Inc.* (2012) 212 Cal.App.4th 258, 271.) Nevertheless, where, as here, "a party affirmatively agrees to an instruction, we do not ignore that fact and deem an objection." (*Ventura*, at p. 271.)

14

instruction was not given. (*White v. Inbound Aviation* (1999) 69 Cal.App.4th 910, 925 (*White*).)

Here, the Rioses do not contend that any of the standard of care instructions given by the trial court was legally incorrect.[5] Instead, they complain the "garden-variety negligence standard" articulated in the instructions given by the court "failed to provide [the jury] with any meaningful guidance on how to evaluate Kamau's or Dunn's conduct." Although the instructions the trial court gave the jury were stated in highly generalized terms that could apply to many different situations, "[i]n most cases, courts have fixed no standard of care for tort liability more precise than that of a reasonably prudent person under like circumstances." (*Ramirez v. Plough, Inc.* (1993) 6 Cal.4th 539, 546.) If the Rioses believed, as they claim on appeal, that the instructions given by the court were too general and that special instructions based on NATA standards should have been given in

---

5      The standard of care instructions given by the trial court correctly stated the law. In a case where, as here, a student and his parents sued a school district for personal injuries the student sustained during a football game played at school, our Supreme Court held: "The standard of care required of an officer or an employee of a public school is that which a person of ordinary prudence, charged with his duties, would exercise under the same circumstances." (*Pirkle v. Oakdale Union etc. School Dist.* (1953) 40 Cal.2d 207, 210.) The Supreme Court cited *Pirkle* for its statement of the standard of care in *Dailey*, *supra*, 2 Cal.3d at page 747. The trial court therefore correctly gave both CACI No. 401 (see fn. 3, *ante*) and the District's special instruction based on *Dailey*. The court also correctly gave CACI No. 412, which told the jury adults must exercise greater caution when dealing with children than with other adults. (See, e.g., *Schwartz v. Helms Bakery, Ltd.* (1967) 67 Cal.2d 232, 240; *Joyce v. Simi Valley Unified School Dist.* (2003) 110 Cal.App.4th 292, 304 & fn. 8.) Finally, the court correctly instructed the jury, pursuant to CACI No. 413, that it could consider, but was not bound by, evidence of customs or practices in deciding whether the District breached the standard of care. (See, e.g., *Morgan v. Stubblefield* (1972) 6 Cal.3d 606, 621, fn. 9 (*Morgan*); *Pauly v. King* (1955) 44 Cal.2d 649, 655; *Varas v. Barco Mfg. Co.* (1962) 205 Cal.App.2d 246, 258.)

15

light of Kamau's and Dunn's superior knowledge and training, then the Rioses should have requested such special instructions. (*Metcalf*, *supra*, 42 Cal.4th at p. 1131; *White*, *supra*, 69 Cal.App.4th at p. 925; *Hyatt*, *supra*, 79 Cal.App.3d at p. 335.) But they did not, and their failure to do so "means [they] may not argue on appeal the trial court should have instructed differently." (*Metcalf*, at p. 1131; see also *Anderson v. Jones* (1968) 266 Cal.App.2d 284, 293 (*Anderson*) [plaintiff's failure to submit and request special instruction on standard of care "precludes him from raising the question on appeal"]; *Newman v. Los Angeles Transit Lines* (1953) 120 Cal.App.2d 685, 698 (*Newman*) ["the failure of a trial court to give an instruction may not be reviewed on appeal unless the record specifies the instruction and shows that it was requested and refused"].)

The Rioses argue they did not forfeit their appellate claim of error. They contend they "diligently" urged the trial court to adopt NATA standards as the standard of care for this case, but the court "prohibited [them] from arguing that NATA could be relied upon in any fashion to form the applicable standard of care." We are not persuaded.

One problem with the Rioses' argument is that they never submitted any NATA standards to the trial court. Although they asked the court to adopt NATA standards as the standard of care for this case, the only information about the substance of those standards contained in the record consists of unsupported assertions that the Rioses' trial counsel made to the trial court in briefing and oral argument. (See pt. II.B., *ante*.) Such assertions are not evidence of what the standards actually prescribe. (See *Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435, 454 ["unsworn averments in a

16

memorandum of law prepared by counsel do not constitute evidence"].) The Rioses' suggestion at oral argument that their trial counsel's assertions constituted a valid offer of proof regarding NATA standards is not persuasive. An offer of proof "'must set forth the actual evidence to be produced and not merely the facts or issues to be addressed and argued.'" (*Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 329.) Where, as here, the offer of proof concerns documents, those documents must be submitted to the trial court for consideration and made part of the appellate record. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1176-1177; *Magic Kitchen LLC v. Good Things Internat., Ltd.* (2007) 153 Cal.App.4th 1144, 1164-1165.) The Rioses therefore did not make a valid offer of proof, because they neither submitted any NATA standards to the trial court nor included any of them in the record on appeal.

In their briefing on appeal, the Rioses continue to refer to the substance of NATA standards, but they cite nothing in support except the bare assertions their counsel made in the trial court. Of course, "allegations of a brief are not evidence." (*In re Marriage of Duris & Urbany* (2011) 193 Cal.App.4th 510, 515].) The Rioses have not asked us to augment the record or otherwise sought to bring any specific NATA standards to our attention. Such deficiencies in the record effectively prevent us from reviewing the trial court's ruling regarding the applicability of NATA standards and therefore result in a forfeiture of the issue. (See, e.g., *Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348 ["appellant has forfeited any challenge to the order . . . due to his failure to provide an adequate record"]; *Estrada v. Ramirez* (1999) 71 Cal.App.4th 618, 620, fn. 1 (*Estrada*) [failure to provide adequate record "precludes an adequate

17

review and results in affirmance of the trial court's determination"]; *Kendall v. Barker* (1988) 197 Cal.App.3d 619, 625 [factual statements in appellate brief not contained in record will be disregarded on appeal].)

Another problem with the Rioses' argument against forfeiture is that it proceeds from the false premise that the trial court's in limine ruling "foreclosed [them] from further arguing that NATA regulations should be the applicable standard of care, or from questioning any of their witnesses regarding NATA."  As we noted earlier, the court ruled in limine that (1) the Rioses could ask Kamau about his NATA certification, what he was taught NATA standards required, and why those standards were adopted; and (2) the jury could consider that testimony in deciding whether the District acted reasonably in treating Colter's ankle injury.  (See pt. II.B., *ante*.)  The court later ruled Hawkins could testify about NATA training and certification insofar as it was pertinent to Kamau's background.  (See pt. II.C., *ante*.)  Despite these favorable rulings, the Rioses' trial counsel did not ask either Kamau or Hawkins any questions about the requirements of any particular NATA standards.  Had counsel done so, he might have obtained helpful testimony about the custom or practice among certified athletic trainers regarding assessment and treatment of the ankle injury Colter suffered.  The Rioses then might have been entitled to a special instruction directing the jury to consider NATA standards, because a "party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence" (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572), and "proof of practice or custom is admissible to assist the trier of fact in determining what constitutes due care"

18

(*Morgan*, *supra*, 6 Cal.3d at p. 621, fn. 9). But, without testimony from either Kamau or Hawkins about what NATA standards required under the circumstances of this case (or at least an offer of proof on that subject), the Rioses may not complain on appeal that the trial court erred by refusing to instruct the jury regarding those standards. (See *Scott v. Rayhrer* (2010) 185 Cal.App.4th 1535, 1539, 1541-1542 [party not entitled to instruction unsupported by substantial evidence]; *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 282 (*Shaw*) [failure to make offer of proof precludes consideration on appeal of allegedly erroneous exclusion of evidence]; *Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1672 [party not entitled to instructions on theory not advanced].)

The Rioses contend the trial court prevented them from eliciting testimony from Kamau and Hawkins that would have supported NATA-based standard of care instructions. We reject these contentions as untimely and factually unsupported.

As to Hawkins, the Rioses argued *for the first time in their reply brief* that "[b]ut for the trial court's prior rulings, [Hawkins] would have testified as to the creation of the NATA regulations, their importance, [and] their adherence by all certified athletic trainers (like Kamau) and athletic training students (like Dunn). He would have testified further that NATA ethical rules prohibit its certified members from working beyond the confines of their scope of practice, which explicitly prohibited Kamau from delegating return-to-play decisions to Dunn." This argument comes too late, for we ordinarily do not consider arguments that are raised for the first time in an appellant's reply brief. (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 268; *American Drug Stores, Inc. v.*

19

*Stroh* (1992) 10 Cal.App.4th 1446, 1453.) The argument also has no factual basis. In violation of appellate briefing rules, the Rioses cite nothing in the record to support their assertion Hawkins would have given the testimony described above. (Cal. Rules of Court, rule 8.204(a)(1)(C); *Duarte*, *supra*, 72 Cal.App.4th at p. 856.) Our own review of the record revealed no support for the Rioses' belated argument. While Hawkins was testifying before the jury, the Rioses' trial counsel asked no questions that would have elicited the testimony they now claim he would have given; counsel requested no hearing outside the presence of the jury regarding the admissibility of such testimony (Evid. Code, § 402, subd. (b)); and counsel made no offer of proof that Hawkins would have given such testimony (*id.*, § 354, subd. (a); *Shaw*, *supra*, 170 Cal.App.4th at p. 282). The Rioses thus failed to preserve this argument for appeal.

As to Kamau, the Rioses asserted *for the first time at oral argument* that their trial counsel attempted to ask him questions about his NATA certification and knowledge of NATA standards, but the trial court sustained the District's objections and, in an unreported sidebar conference, reversed its in limine ruling and precluded trial counsel from pursuing that line of questioning. This argument is procedurally barred because points first raised at oral argument are untimely and need not be considered. (*California Redevelopment Assn. v. Matosantos* (2013) 212 Cal.App.4th 1457, 1500.) In addition, the Rioses have not met their "burden of showing reversible error by an adequate record." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) The reporter's transcript contains an inquiry into Kamau's background during which the Rioses' trial counsel asked Kamau several questions about the relationship between his college education and his "purpose"

20

in becoming a certified athletic trainer and the trial court sustained the District's relevancy objections. The Rioses' trial counsel requested a sidebar conference, which was not reported and after which the court did not state on the record what was discussed or what rulings were made. The Rioses' counsel then asked additional questions about Kamau's education and experience as a student athletic trainer, to which the District did not object. On this record, we cannot infer the trial court precluded all inquiry into Kamau's NATA certification or knowledge of NATA standards. "Before an appellate court can knowledgeably rule upon an evidentiary issue presented, it must have an adequate record before it to determine if an error was made." (*In re Mark C.* (1992) 7 Cal.App.4th 433, 445.) When the challenged ruling is made in an unreported sidebar conference, we require a settled statement or some indication on the record as to what happened in the conference. (*People v. Pinholster* (1992) 1 Cal.4th 865, 931, 937; *People v. Tuggles* (2009) 179 Cal.App.4th 339, 356.) Here, we have neither. "Because of the uncertainty in the record concerning the nature of the proffered evidence, we cannot say that the [trial] court erred in excluding it." (*In re Mark C.*, at p. 445.) "We reject [the Rioses'] claim, therefore, because they failed to provide this court with a record adequate to evaluate [their] contention." (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132.)

     2.    *CIF Guidelines*

The Rioses also argue the trial court erred when it ruled the CIF guidelines did not apply to Kamau and Dunn but only to coaches, and thus refused to instruct the jury that

those guidelines established the applicable standard of care. This argument fails for at least three reasons.

First, the Rioses' argument proceeds from the false premise that the trial court actually "rul[ed] that the CIF standards of care as detailed in its *Sports Medicine Handbook* only applied to coaches and could not be used to measure Kamau['s] and Dunn's conduct, because as sports medicine professionals, they had greater education and training than coaches." Although the Rioses cite several pages of the reporter's transcript as purported support for this argument, the cited pages contain no "ruling" that the CIF guidelines did not apply to Kamau or Dunn. On some of the cited pages, a former District employee in charge of athletics testified that the CIF handbook was "a guideline for best practices" for coaches and others "involved in running a CIF-type athletic event"; and if a trainer or some other person with more knowledge than a coach was present, the trainer or the other person, not the coach, would decide whether an injured player could return to play. On another page cited by the Rioses, the District's trial counsel asserted a certain CIF sports medicine bulletin applied to coaches only; the Rioses' trial counsel disagreed; and the court stated, "That will be argument to the jury." The court therefore did *not* rule that CIF guidelines could not be used to determine whether Kamau or Dunn met the standard of care. Rather, the court admitted the guidelines into evidence; permitted the Rioses' counsel to argue that Kamau, Dunn, and the coaches violated the guidelines; and left it to the jury to decide whether the District was negligent based on those purported violations.

Second, the Rioses may not complain on appeal that the trial court refused to instruct the jury that CIF guidelines prescribed the applicable standard of care because at trial they repeatedly took the opposite position. During in limine motions, the Rioses argued CIF guidelines did *not* establish the standard of care because the CIF Sports Medicine Handbook expressly stated that its "'guidelines' are not meant to provide a 'standard of care.'" During trial, the Rioses argued that CIF guidelines merely "*help*[*ed*] *establish* the standard of care" and that their expert witness (Hawkins) could "look to" them in testifying about whether the District met the standard of care. (Italics added.) The trial court agreed; permitted Hawkins to testify extensively as to how the District violated CIF guidelines in evaluating and treating Colter; admitted the guidelines into evidence; and instructed the jury it could consider, but was not bound by, custom and practice in determining whether the District was negligent. Furthermore, the Rioses' trial counsel commented on several CIF guidelines during closing arguments and told the jury they were "the basic safety rules that [it had] to analyze . . . to decide whether or not [the District] acted negligently." Having obtained rulings from the trial court that allowed the Rioses to use CIF guidelines exactly as they had requested, they are "estopped from asserting [those rulings] as grounds for reversal." (*Lockaway Storage v. County of Alameda* (2013) 216 Cal.App.4th 161, 181; see also *Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1686 ["where a deliberate trial strategy results in an outcome disappointing to the advocate, the lawyer may not use that tactical decision as the basis to claim prejudicial error"].)

Third, the Rioses forfeited their appellate claim that the trial court erred by not giving the jury standard of care instructions based on CIF guidelines. As we explained earlier, a civil litigant who believes pattern instructions are too general must request more specific instructions in order to preserve a claim of instructional error. (*Metcalf*, *supra*, 42 Cal.4th at p. 1131; *Pool*, *supra*, 42 Cal.3d at p. 1067; *Hyatt*, *supra*, 79 Cal.App.3d at p. 335.) Here, although CIF guidelines were admitted into evidence and Hawkins testified extensively about the District's multiple violations of them, the Rioses never requested a special instruction incorporating CIF guidelines into the standard of care or expressly directing the jury to consider those guidelines in determining whether the District was negligent. They therefore forfeited their claim the trial court erred by not giving such instructions. (*Metcalf*, at p. 1131; *White*, *supra*, 69 Cal.App.4th at p. 925; *Anderson*, *supra*, 266 Cal.App.2d at p. 293; *Newman*, *supra*, 120 Cal.App.2d at p. 698.)

In sum, we hold the Rioses forfeited their appellate claims that the trial court erred by not specifically instructing the jury that NATA standards or CIF guidelines established the standard of care for this case. Given that holding, we need not consider the parties' competing contentions about whether the trial court committed instructional error or whether any such error was prejudicial. (See, e.g., *AmeriGas Propane, L.P. v. Landstar Ranger, Inc.* (2010) 184 Cal.App.4th 981, 1001, fn. 4 [appellate court may pass forfeited contention without considering merits]; *People ex rel. Reisig v. Acuna* (2010) 182 Cal.App.4th 866, 879 [same].) We also need not consider the alternative ground for affirmance urged by the District, namely, that the doctrine of primary assumption of the risk bars the Rioses' claims. (See, e.g., *Lindemann v. Hume* (2012) 204 Cal.App.4th 556,

24

563, fn. 7 [in light of decision to affirm challenged order on one ground, appellate court did not address alternate ground urged by respondent].)

DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.